**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL ACTION NO. 3:22-CV-167-RJC-DCK**

| | | |
|---|---|---|
| **ADRIANNA ESTHER BLACKWELL,** | ) | |
| **as Administratrix of the Estate of D.W.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **MEMORANDUM AND** |
| **v.** | ) | **RECOMMENDATION** |
| | ) | |
| **GARRY L. MCFADDEN, MECKLENBURG** | ) | |
| **COUNTY, STATE OF NORTH CAROLINA,** | ) | |
| **DWIGHT DWAYNE WELLER, TIFFANY** | ) | |
| **PARKER WILLIAMS, AKEEM DWAYNE** | ) | |
| **COMAS, HENRIETTA SAUNDERS, EDDIE M.** | ) | |
| **BUFFALOE, JR., CHARLES MOORE, TAMMY** | ) | |
| **GUESS, KIM COWART, SAMUEL PAGE,** | ) | |
| **ANGIE WEBSTER, LIBERTY MUTUAL** | ) | |
| **INSURANCE, and PLATTE RIVER** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

   **THIS MATTER IS BEFORE THE COURT** on "Defendants Sheriff Garry McFadden, Dwight Weller, Tiffany Williams, Akeem Comas, And Henrietta Saunders' Partial Motion To Dismiss Plaintiff's Amended Complaint" (Document No. 27); "Defendant Mecklenburg County's Motion to Dismiss Amended Complaint" (Document No. 30); and the "Motion To Dismiss By Defendants State, Buffalo, And Cowart" (Document No. 50). These motions have been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and are now ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that Document No. 27 be <u>granted</u> in part and <u>denied</u> in part, and that Document Nos. 30 and 50 be <u>granted</u>.

## I. BACKGROUND

### A. Factual Allegations

Adrianna E. Blackwell ("Plaintiff") is the Administratrix of the Estate of D.W., her 17-year-old minor son who died while in pretrial detention on November 21, 2020, inside a juvenile detention facility operated by the Mecklenburg County Sheriff at Mecklenburg County's North Detention Center ("Jail North"). (Document No. 24, pp. 2, 6). According to the allegations contained in the Amended Complaint, Plaintiff's son — referred to as "D.W." — endured a traumatic life. (Document No. 24, pp. 14-15). Based on prior intake histories as recorded in the North Carolina Juvenile Online Information Network ("NC-JOIN") (a computer database by which North Carolina law enforcement agencies record and share information about juveniles), D.W. had previously been a victim of Indecent Liberties with a Minor on May 3, 2006, a victim in a matter of Assault with a Deadly Weapon on December 30, 2008, and an "Involved/Other" in a child abuse/assault matter on April 8, 2011. Id. NC-JOIN also contained information that D.W. had suffered a serious head injury as a young child and that D.W.'s father was incarcerated at the time of D.W.'s arrest in November 2020. (Document No. 24, ¶¶ 101-102). NC-JOIN entries noted that D.W. suffered from anger management issues, restlessness, impulsive risk taking, and substance abuse. (Document No. 24, ¶¶ 106-109).

On November 5, 2020, D.W was arrested by the Rockingham County Sheriff's Office for first degree murder, and taken to the Rockingham County Law Enforcement Center (Document No. 24, ¶¶ 136, 177). Defendant Angie Webster ("Webster"), an employee of the Rockingham County Sheriff's Office, assisted with the investigation leading to D.W.'s arrest and participated in an interview of D.W. on November 5, 2020, that lasted more than six (6) hours. (Document No. 24, p. 10). According to the Amended Complaint, an interview room surveillance camera at

2

the Rockingham County Detention Center captured D.W. quoting lyrics from a song that referenced suicide. (Document No. 24, ¶ 143). However, the NC-JOIN system was not updated to describe D.W.'s quotation of those lyrics. (Document No. 24, ¶¶ 143, 145, 171-174). Later on November 5, 2020, at the instruction of the North Carolina Department of Public Safety ("DPS"), D.W. was transferred from Rockingham County to the Alexander Regional Juvenile Detention Center ("Alexander Regional") in Alexander County. (Document No. 24, ¶ 144).

Based on two (2) initial assessments by Defendant Tammy Guess ("Guess"), on November 5 and 6, 2020, D.W. was placed on a "suicide alert" (which was recorded in NC-JOIN). (Document No. 24, ¶¶ 163-164). Following a subsequent assessment, Defendant Charles Moore ("Moore") removed D.W. from suicide alert status on November 7, 2020. (Document No. 24, ¶ 165). However, a self-harm prevention order stated that "pencils and pens are to be removed from his room." (Document No. 24, ¶ 167).

On November 9, 2020, after D.W. learned that Rockingham County officials had charged him with first-degree murder, he indicated to Alexander Regional employees that he felt anxious and depressed, and had difficulty sleeping. (Document No. 24, ¶ 178). On November 9 and 10, two separate Alexander Regional employees requested an additional mental health consult for D.W., and D.W.'s mental health status was listed as being outside normal limits ("ONL"). (Document No. 24, ¶¶ 177-181). However, D.W. was not returned to suicide alert status, and the November 9-10 observations were not entered into NC-JOIN. (Document No. 24, ¶¶ 182-183).

Throughout D.W.'s time at Alexander Regional, Plaintiff alleges that DPS employees Moore, Guess, and Kim Cowart ("Cowart") knew that D.W. "presented with more than one indicator associated with suicidal ideation." (Document No. 24, ¶ 162). "Despite this knowledge, nobody from DPS ever[] recommended that D.W. be placed back on suicide alert after November

3

7, 2020, and D.W. was not seen by a psychiatrist to be evaluated for possible medication." (Document No. 29, pp. 5-6) (citing Document No. 24, ¶¶ 183, 184).

D.W. remained at Alexander Regional until November 20, 2020, when he was transferred to Jail North in Mecklenburg County. (Document No. 24, ¶¶ 189-190). Plaintiff alleges that personnel at Alexander Regional failed to complete a required custody transfer form, which would have included additional information about D.W.'s mental health status. (Document No. 24, ¶¶ 190-191).

On November 21, 2020, D.W. was placed on suicide alert at Jail North, but not the more stringent suicide watch. (Document No. 24, ¶¶ 196, 209). Plaintiff notes that "[a]s a detainee on suicide alert corrections officers were required, at least, to glance inside D.W.'s cell once every ten minutes." (Document No. 24, p. 28). Despite being on suicide alert and notes from Alexander Regional that "D.W. was not to have bedsheets nor sharp objects," D.W.'s Jail North cell contained: multiple furnishings (not all attached to floor or walls); a metal grate in the ceiling; bedsheets; and at least one sharp object – a writing utensil. (Document No. 24, ¶¶ 213-216).

Defendant Dwight Dwayne Weller ("Weller") was on duty at Jail North, and was responsible for conducting tours of D.W.'s pod. (Document No. 24, ¶¶ 225-226). During that shift, Defendants Akeem Dwayne Comas ("Comas") and Tiffany Parker Williams ("Williams") were Weller's supervisors, and Defendant Henrietta Saunders ("Saunders") was a captain. (Document No. 24, ¶¶ 81, 83, 84, 87, 92, 223).

On November 21, 2020, at 1:56 pm, D.W. was found hanging in his cell from a bedsheet fastened to the metal grate in the ceiling. (Document No. 24, ¶¶ 230, 237). Attempts to revive D.W. were unsuccessful and he was transported to a hospital where he was pronounced dead at 3:12 pm on November 21, 2020. (Document No. 24, ¶ 249). Plaintiff alleges that D.W.'s death

resulted from leaving D.W. in a cell with access to the means to commit suicide and failing to monitor D.W.'s jail cell adequately. (Document No. 24, ¶¶ 224, 288, 294-296, 300). Moreover, Plaintiff alleges that "Defendant Weller and other Mecklenburg County Defendants falsified records to make it appear that Defendant Weller had observed D.W. within the required ten-minute intervals." (Document No. 24, ¶ 239).

## B. Procedural History

Plaintiff initiated this action with the filing of a "Complaint" (Document No. 1) on April 18, 2022. "Plaintiff's First Amended Complaint" (Document No. 24) (the "Complaint") was then filed on June 12, 2022. The Complaint includes the following claims: (1) Deliberate Indifference Under the Fourteenth Amendment – 42 U.S.C. § 1983; (2) Monell Violation – Custom & Practice in Violation of the Fourteenth Amendment Due Process Clause – 42 U.S.C. § 1983; (3) Wrongful Death – N.C.Gen.Stat. § 28A-18-2; (4) Survival Action for Pain and Suffering – N.C.Gen.Stat. § 28A-18-1; (5) Injury to Prisoner by Jailer – N.C.Gen.Stat. § 162-55; (6) Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act – 42 U.S.C. § 12132 and 29 U.S.C. § 794 ("VRA"); (7) North Carolina Persons with Disabilities Protection Act – N.C.Gen.Stat. § 168A-7; (8) Wrongful Death (Negligent Architectural Design) – N.C.Gen.Stat. § 28A-18-2; (9) Wrongful Death (Negligence Per Se) – N.C.Gen.Stat. § 153A-224; and (10) Action on the Bond. (Document No. 24, pp. 38-54).

"Defendants Sheriff Garry McFadden, Dwight Weller, Tiffany Williams, Akeem Comas, And Henrietta Saunders' Partial Motion To Dismiss Plaintiff's Amended Complaint" (Document No. 27) and "Defendant Mecklenburg County's Motion to Dismiss Amended Complaint" (Document No. 30) were filed on June 24, 2022. The "Motion To Dismiss By Defendants State, Buffalo, And Cowart" (Document No. 50) was then filed on July 27, 2022.

The pending motions have been fully briefed and are ripe for review and a recommended disposition to the Honorable Robert J. Conrad, Jr.

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(1) seeks to dismiss a complaint for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). The plaintiff has the burden of proving that subject matter jurisdiction exists. See Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). The existence of subject matter jurisdiction is a threshold issue the court must address before considering the merits of the case. Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999). "The subject matter jurisdiction of federal courts is limited and the federal courts may exercise only that jurisdiction which Congress has prescribed." Chris v. Tenet, 221 F.3d 648, 655 (4th Cir. 2000) (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)).

When a defendant challenges subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, 945 F.2d at 768. The district court should grant the Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id. See also, Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999).

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts

to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also, Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

## III. DISCUSSION

### A. Sheriff Garry McFadden, Dwight Weller, Tiffany Williams, Akeem Comas, and Henrietta Saunders' Partial Motion To Dismiss

Pursuant to Fed.R.Civ.P. 12(b)(6), Defendants McFadden, Weller, Williams, Comas, and Saunders seek dismissal of most of the claims against them. See (Document Nos. 27 and 29).

However, Defendants are *not* "moving to dismiss the official capacity wrongful death claim against Sheriff McFadden in the third, eighth, and ninth claims for relief, or the individual capacity claim [for] wrongful death and survival claims against Weller in the third, fourth, and ninth claims for relief." (Document No. 29, pp. 4-5). McFadden, Weller, Williams, Comas, and Saunders were all employees of the Mecklenburg County Sheriff's Office. See (Document No. 24, pp. 8, 12-14). The undersigned will address the claims the Mecklenburg County Sheriff's Office employees seek to dismiss below.

### 1. Deliberate Indifference Under Fourteenth Amendment Pursuant to § 1983

Count I for Deliberate Indifference under the Fourteenth Amendment is brought against Defendants Weller, Williams, Comas, Saunders, and Cowart in their individual capacities. (Document No. 24, p. 38). Defendants argue that this claim should be dismissed because there are no factual allegations that they were deliberately indifferent to D.W. (Document No. 29, pp. 9-18). Defendants include the following instructive caselaw:

> Jail suicide claims "are considered and treated as claims based on the failure of jail officials to provide medical care for those in their custody." *Barrie v. Grand County*, 119 F.3d 862, 866 (10th Cir. 1997); *accord Williams v. Kelso*, 201 F.3d 1060, 1065 (8th Cir. 2000). An inmate's right to adequate medical care is violated only when a jail official acts with "deliberate indifference" to "a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 827, 828, 114 S.Ct. 1970, 1974 (1994). Deliberate indifference "is a very high standard -- a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999).

> To demonstrate that [Defendants] w[ere] deliberately indifferent and violated D.W.'s rights, Plaintiff must establish that (1) D.W. was detained under conditions posing a substantial risk of serious harm; and (2) [Defendants] knew it and disregarded an excessive risk to D.W.'s health or safety. *Brown v. Harris*, 240 F.3d 383, 389 (4th Cir. 2001).

> . . . A defendant "acts with deliberate indifference if he had actual knowledge of the [plaintiff's] serious medical needs and the related

8

risks, but nevertheless disregarded them." *See DePaola v. Clarke*, 884 F.3d. 481, 486 (4th Cir. 2018)

(Document No. 29, pp. 9-10).

A fairly recent decision by this Court noted that the standard for deliberate indifference "under the Fourteenth Amendment is in flux." Thompson v. City of Charlotte, 3:20-CV-370-MOC-DSC, 2020 WL 7033966, at *2-4 (W.D.N.C. Nov. 30, 2020). In Thompson, the Honorable Max O. Cogburn, Jr. held that regardless of the applicable standard, at the "motion to dismiss stage," dismissal of the deliberate indifference claim against the City, County Defendants, and Ohio Casualty would be denied. Id. at *6.

### a. Defendant Weller

In this case, Defendants first address the allegations against Defendant Weller. (Document No. 29, pp. 9-13). "Defendants do not dispute that Plaintiff has sufficiently alleged the objective deliberate indifference prong" – that D.W. was detained under conditions posing a substantial risk of serious harm. (Document No. 29, p. 11). But they assert that Plaintiff has not satisfied the second prong because it has not been adequately alleged that Weller "knew D.W. was at a risk of committing suicide and that he ignored it." Id. Defendants further assert that the allegations that Weller "failed to properly conduct cell checks – sound in negligence, not deliberate indifference." (Document No. 29, p. 13).

In response, Plaintiff first asserts that Weller was deliberately indifferent to a substantial risk of serious harm and to a serious medical need. (Document No. 41, p. 5). Plaintiff notes that Weller has acknowledged allegations that he was aware that D.W. was on suicide alert and of D.W.'s fragile mental state. (Document No. 41, p. 6) (citations omitted). Plaintiff further notes that the "Constitution does not distinguish between degrees of suicide risk;  it mandates that officials protect detainees from a *substantial* risk of serious harm." (Document No. 41, p. 7) (citing

9

Farmer v. Brennan, 511 U.S. 825, 840 (1994)).  According to Plaintiff, D.W.'s suicide screening revealed that he posed a substantial risk to himself.  Id.

Plaintiff observes that "Defendant Weller suggests that deliberate indifference demands nothing short of near certainty of a catastrophic outcome," but Plaintiff contends that "allegations relating to subjective awareness or knowledge may be alleged generally."  Id. (citing Document No. 29, p. 11 and Fed.R.Civ.P. 9(b)).  Plaintiff argues that Weller's knowledge of D.W.'s risk of suicide has been adequately alleged – Weller knew D.W. was on suicide alert and was required to be observed every ten minutes.  Id. (citing Document No. 24, ¶¶ 212, 224, 239, 292).  Plaintiff further argues that Weller was subjectively aware of the suicide risk since he and other Defendants falsified records to make it appear D.W. had been observed every ten minutes.  (Document No. 41, pp. 7-8) (citing Document No. 24, ¶ 292).

Next, Plaintiff contends that because D.W. was a juvenile, a Constitutional violation is shown even without Weller's subjective intent.  (Document No. 41, p. 8).  This is one of the limited circumstances "in which a pretrial detainee is entitled to 'more considerate treatment and conditions of confinement' than a convicted prisoner."  Id. (quoting Youngberg v. Romeo, 457 U.S. 307, 322 (1982)).  According to Plaintiff, "an underage pretrial detainee may experience a constitutional deprivation where a guard's actions amount to something greater than negligence, but less than deliberate indifference."  (Document No. 41, p. 9).  "[C]ourts within the Fourth Circuit have found that the Youngberg 'professional judgment' standard is appropriate when weighing the constitutionality of juvenile detention facilities."  Id.  (citations omitted).

In reply, Defendants again acknowledge that "Plaintiff has sufficiently alleged that D.W. had a serious medical need" but then argue that the "allegations fail to demonstrate that the risk that D.W. was going to commit suicide was 'so obvious as to justify an inference of actual

10

knowledge' by Weller" (Document No. 45, p. 3) (quoting Parrish ex. Rel. Lee v. Cleveland, 372 F.3d 294, 304 (4th Cir. 2004)).

Defendants also assert in the reply brief that Plaintiff's "professional judgment" standard cited by Plaintiff is not applicable here "because D.W. was a pretrial detainee." (Document No. 45, p. 4) (citing Mays v. Sprinkle, 992 F.3d 295, 300 (4th Cir. 2021)).

After considering the parties' arguments, the undersigned is persuaded that Plaintiff's allegations are sufficient at this stage of the litigation to support the claim for deliberate indifference as to Weller.

Contrary to Defendants' contention that there are "no factual allegations that [Weller] was deliberately indifferent to D.W.," Plaintiff adequately alleges that Weller knew D.W. was on suicide alert, that he was required to observe D.W. every ten minutes, that he did not observe D.W. every ten minutes in the last few hours of D.W.'s life, and that Weller later falsified records to show that he had made observations of D.W. every ten minutes. See (Document No. 41, pp. 7-8) (citing Document No. 24, ¶¶ 212, 224, 239, 292).

The undersigned will recommend that the motion to dismiss the Count I deliberate indifference claim be denied as to Defendant Weller.

### b. Defendants Williams, Comas, and Saunders

Defendants Williams, Comas, and Saunders contend that, unlike Weller, there are no allegations of their involvement in the events leading up to D.W.'s death "apart from being supervisors." (Document No. 29, p. 14). Defendants contend that the "failure to allege any personal involvement by Williams, Comas, and Saunders mandates dismissal of the section 1983 individual capacity liability claims against them." (Document No. 29, p. 15). Defendants acknowledge that Plaintiff alleged "that Williams, Comas, and Saunders knew D.W. was suicidal

and 'should have taken steps to ensure the line staff were performing their appointed rounds in a constitutionally compliant manner.'" Id. (quoting Document No. 24, ¶ 287).

Defendants also contend that even if Plaintiff intended to assert a supervisory liability claim, it would fail. Id. Defendants note that the Complaint alleges "negligent supervision" and argue that "[i]t is well-established that an individual's constitutional rights are not violated by negligent acts." (Document No. 29, pp. 15-16) (citing Daniels v. Williams, 474 U.S. 327, 336 (1986)). According to Defendants, there are also no factual allegations to support more than "negligent supervision." (Document No. 29, p. 16).

Plaintiff argues that the Complaint adequately alleges that Defendants Williams, Comas, and Saunders were deliberately indifferent. (Document No. 41, p. 12). Although these three Defendants were not responsible for conducting actual checks of D.W., they "knew the checks were not being performed." Id. Plaintiff contends that a "plaintiff may establish deliberate indifference by 'demonstrating a supervisor's continued inaction in the face of documented widespread abuses.'" Id. (citing Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994)).

Addressing the claim against Williams, Comas, and Saunders, Defendants' reply asserts that there are "no allegations about how Williams, Comas, and Saunders knew checks were not being performed, the basis of their would-be knowledge, or that they ignored Weller's alleged failure to perform checks." (Document No. 45, p. 6). Defendants then clarify that the only allegation is that these three Defendants "knew or should have known that Defendant Weller was not conducting proper surveillance . . . because, upon information and belief, it was common practice in Jail North to conduct constitutionally inadequate pod tours." Id. (quoting Document No. 24, ¶ 286). Defendants argue that Plaintiff's allegations "fall woefully short of demonstrating supervisory liability under Section 1983" – "there are no factual allegations that Williams, Comas,

and Saunders knew about constitutional injuries to D.W. and failed to take any action, or authorized such action." (Document No. 45, p. 7).

Although this presents a somewhat close call, the undersigned is persuaded by Defendants' arguments that the allegations are not sufficient to support supervisory liability for Williams, Comas, and Saunders. <u>See</u> (Document No. 29, pp. 15-16; Document No. 45, pp. 6-8). The allegation that Williams, Comas, and Saunders "knew" Weller was not conducting proper cell checks seems to be limited to a single vague and conclusory statement in one paragraph of the Complaint. <u>See</u> (Document No. 24, ¶ 286); <u>see also</u> (Document No. 24, pp. 25-33) (no supporting facts or allegations for the deliberate indifference claim against these Defendants). In short, the Complaint does not include "enough facts to state a claim to relief that is plausible on its face." <u>Iqbal</u>, 556 U.S. at 678.

The undersigned will respectfully recommend that the motion to dismiss the Count I deliberate indifference claim be <u>granted</u> as to Defendants Williams, Comas, and Saunders.

### 2. **Qualified Immunity**

Defendants argue that the "individual Mecklenburg County Sheriff's Office Defendants are also protected by qualified immunity because they did not violate D.W.'s clearly established rights." (Document No. 29, p. 18) (citing <u>Torchinsky v. Siwinski</u>, 942 F.2d 257, 261 (4th Cir. 1991)).

> A Court reviewing qualified immunity first considers whether "the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001). If there has been no constitutional violation, the officer is entitled to qualified immunity. *Id.* If the facts could establish a constitutional violation, the Court must analyze whether the constitutional right alleged to have been violated was "clearly established" at the time of the officer's actions. *Id.* In *Pearson v. Callahan*, 555 U.S. 194, 236, 129 S.Ct. 808, 817-18 (2009), the Supreme Court granted courts discretion over the order of application of the *Saucier* analysis,

while recognizing that conducting the analysis in order is often beneficial.

Id.

Defendants note that "[i]t is well settled that officers are entitled to qualified immunity if they had no reason to suspect that the prisoner was a suicide risk." (Document No. 29, p. 19) (citing Belcher v. Oliver, 898 F.2d 32, 35 (4th Cir. 1990) and Gordon v. Kidd, 971 F.2d. 1087, 1094 (4th Cir. 1982)). Defendants then suggest that even if Weller knew D.W. was on "suicide alert" he lacked requisite subjective knowledge because "there are no factual allegations that Weller *knew* D.W. was going to commit suicide." Id. (emphasis added).

In response, Plaintiff argues that Defendants are shielded by qualified immunity "unless a plaintiff pleads facts showing that the official violated a 'clearly established' constitutional right." (Document No. 41, p. 13) (citing Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011)). According to Plaintiff, "it is beyond debate that the Fourteenth Amendment ensures pretrial detainees the constitutional right to medical care for serious medical needs and protection from substantial risk of harm (including self-harm)." Id.

Defendants' reply brief seems to conclude that "there is no constitutional violation," and therefore, "qualified immunity applies and the court need not address whether the constitutional right in question was clearly established." (Document No. 45, p. 8).

Based on the parties' arguments, and noting the early stage of the litigation, the undersigned will recommend that dismissal of claims against Defendants on the basis of qualified immunity be denied.

### 3. Monell Liability Against McFadden

Next, Defendants argue that Count II, alleging a <u>Monell</u> violation by Defendant McFadden in his official capacity, should be dismissed. (Document No. 29, p. 20). Defendants' succinct argument states the following:

> It is well-established that there can be no municipal liability without any underlying violation of D.W.'s rights. *Grayson v. Peed*, 195 F.3d. 692, 697 (4th Cir. 1999) ("[a]s there are no underlying constitutional violations by any individual, there can be no municipal liability."). As made clear above, DW.'s constitutional rights were not violated by any individual Mecklenburg County Sheriff's Office defendant. Therefore, there can be no finding of municipal liability by Sheriff McFadden in his official capacity under *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018 (1978).

(Document No. 29, p. 20).

In response, Plaintiff asserts that the Section 1983 claim brought pursuant to <u>Monell</u>, is adequately pleaded. (Document No. 41, pp. 13-14). Plaintiff notes that

> a *Monell* claim exists independently of any one employee. *Monell* exists precisely because there is no *respondeat superior* liability under Section 1983. *Id.* at 691; *see also Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994). A *Monell* claim succeeds where there exists an unconstitutional policy or custom that is the "moving force" behind the constitutional injury. *Id.* at 694. . . . Put differently, municipal liability pursuant to Monell occurs "when a pattern of comparable practices has become actually or constructively known to responsible policymakers." *Spell v. McDaniel*, 824 F.2d 1380, 1391 (4th Cir. 1987).

(Document No. 41, p. 14).

Moreover, Plaintiff notes that the Complaint includes factual allegations "that establish constitutional injuries caused by Sheriff McFadden's individual employees." <u>Id.</u>

In reply, Defendants re-assert that "there is no underlying constitutional violation by any employees of the Mecklenburg County Sheriff's Office, and therefore [,] there can be no *<u>Monell</u>* liability." (Document No. 45, p. 9).

Neither side's argument here is particularly insightful. Defendants appear to ignore that Plaintiff has alleged Constitutional violations by Sheriff's Office Defendants as discussed above, and that some of those claims could survive. Meanwhile, Plaintiff (and Defendants) neglect to mention that the Complaint includes allegations of a custom or practice by the Sheriff's Office of "conducting lax, poorly-documented, and irregular pod tours and of allowing personnel to conduct cursory checks of juveniles without ensuring that there is a visual observation of the juvenile on each pass." (Document No. 24, pp. 40-41).

The Complaint further states that in "the several years prior to November 2020, Mecklenburg County had experienced several jail suicides, that were caused, in part, by a failure of staff to adequately supervise to the minimal requirements of the Fourteenth Amendment." (Document No. 24, ¶ 306).

Related to Plaintiff's foregoing allegation, the undersigned notes, and finds instructive, that this Court recently declined to dismiss a claim for <u>Monell</u> liability against the City of Charlotte under similar circumstances where a detainee committed suicide at the Mecklenburg County Jail. <u>See</u> <u>Thompson v. City of Charlotte</u>, 2020 WL 7033966, at *4.

Based on the foregoing, the undersigned will respectfully recommend that the motion to dismiss Plaintiff's Count II § 1983 <u>Monell</u> violation against Defendant McFadden in his official capacity be <u>denied</u>.

**4**. **State Tort Claims Against Weller, Williams, Comas, and Saunders**

    **a**. **Official Capacity Claims Against Weller, Williams, Comas, and Saunders**

Defendants next seek dismissal of the official capacity state tort claims against Weller, Williams, Comas, and Saunders for: wrongful death (Count III), survival action for pain and

16

suffering (Count IV), injury to prisoner by jailer (Count V), and wrongful death (negligence per se) (Count IX).  (Document No. 29, pp. 20-21).

Defendants argue that "the official capacity claims against Weller, Williams, Comas, and Saunders should be dismissed as being duplicative of *the claim* against Sheriff McFadden in his official capacity."  (Document No. 29, p. 21) (emphasis added).  Defendants note that "official-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"  Id.  (citing Moore v. City of Creedmoor, 345 N.C. 356, 367, (1997) (quoting Kentucky v. Graham, 473 U.S. 159, 165, (1985)).  Moreover, "a suit where the plaintiff asserts a claim against a government entity, [also naming] those individuals working in their official capacity for th[e] government entity is redundant."  Id.  (citing May v. City of Durham, 136 N.C.App. 578, 584, (2000)).

In response, Plaintiff suggests that Defendants are confusing an official capacity claim brought under 42 U.S.C. § 1983 and claims brought under state tort law.  (Document No. 41, pp. 16-17).  Plaintiff acknowledges that while Sheriff McFadden (in Count II) is "the *only* appropriate official-capacity defendant with regard to a Section 1983 *Monell* claim, the same is not true as to state-law tort claims."  Id.  Plaintiff contends that the three state court cases Defendants rely on for the proposition that suing multiple municipal employees in their official capacities is "redundant" all discuss federal Section 1983 claims, not state-law claims.  (Document No. 41, p. 17) (citations omitted).

In reply, Defendants first note that Plaintiff failed to address the Count V injury to prisoner claim against Comas, Saunders, and Williams.  (Document No. 45, p. 9).  As such, Defendants argue that Plaintiff has abandoned the Count V claim as to these Defendants and the motion to dismiss should be granted.  (Document No. 45, pp. 9-10) (citing Ferdinand–Davenport v.

17

Children's Guild, 742 F.Supp.2d 772, 777 (D.Md. 2010) ("By her failure to respond to [defendant's] argument" in a motion to dismiss, "the plaintiff abandons [her] claim."); Kinetic Concepts, Inc. v. Convatec Inc., 2010 WL 1667285 at *8 (M.D.N.C. 2010)).

As to the other tort claims against Defendants in their official capacity, Defendants re-assert that such claims are redundant – "North Carolina courts, like their federal brethren, recognize that official capacity claims against individuals are redundant when the entity is sued." (Document No. 45, pp. 10-11) (citing Mullis v. Sechrest, 347 N.C. 548, 554, (1998); Bigelow v. Town of Chapel Hill, 227 N.C.App. 1, 15 (2013); and Wright v. Town of Zebulon, 202 N.C. App. 540, 543-544 (2010) ("in a suit where the plaintiff asserts a claim against a government entity, [also naming] those individuals working in their official capacity for th[e] government entity is redundant")).

As an initial matter, the undersigned observes that Defendants' argument could be clearer. Defendants assert that the official capacity claims against Williams, Comas, and Saunders in Counts III, IV, V, and IX "should be dismissed as being duplicative of *the claim* against Sheriff McFadden in his official capacity." (Document No. 29, p. 21) (emphasis added). However, Defendants fail to identify which official capacity claim(s) against McFadden they are referring to. Id. McFadden is named in his official capacity in state law claims involving Counts III, VIII and IX, but McFadden is not a named Defendant in Counts IV and V. (Document No. 24). It is unclear whether Defendant Sheriff's Office employees are arguing that all the state tort claims against them in their official capacity should be dismissed based on the official capacity claim(s) against McFadden, or just the ones also naming McFadden.

It is instructive that in Thompson this Court held that official capacity claims pursuant to §1983 against City and County employees were duplicative or redundant to claims brought against

18

the City and County.  Thompson, 2020 WL 7033966, at *6 (citing Love-Lane v. Martin, 355 F.3d 766, 783 (4th Cir. 2004) (when a plaintiff sues both the local government and its officials or employees in their official capacities under Section 1983, the Fourth Circuit views the official capacity claims as duplicative and dismisses said claims");  see also Hogan v. Cherokee County, 519 F.Supp.3d 263, 284 (W.D.N.C. 2021).  However, this Court declined to dismiss state tort claims against Sheriff McFadden and other County defendants for injury to prisoner and wrongful death.  Thompson, 2020 WL 7033966, at *7.  This Court stated that dismissal was granted as to "*all official capacity* claims against [Deputy] Louis Venant and [Deputy] Joseph Breedlove, [and] *all individual capacity* claims against Sheriff McFadden."  Thompson, 2020 WL 7033966, at *6-8 (emphasis added).

Based on the foregoing, the undersigned will recommend that the motion to dismiss as to Defendants Weller, Comas, Saunders, and Williams in their official capacity be granted for Count III wrongful death and Count IX wrongful death (negligence per se) where McFadden is a named Defendant;  and denied for the Count IV survival action for pain and suffering where McFadden is not a Defendant.  Furthermore, the undersigned agrees that without any response from Plaintiff regarding dismissal of the Count V injury to prisoner claim, the motion to dismiss should be granted – as to Weller, Williams, Comas, and Saunders in their official capacity.  See (Document No. 41, p. 16).

### b.  Individual Capacity Claims Against Williams, Comas, and Saunders

Defendants further argue that the Complaint provides no factual support for tort claims against Williams, Comas, and Saunders in their individual capacity in Counts III, IV, V, and IX. (Document No. 29, pp. 21-22).

For the third, fourth, and ninth claims for relief, Defendants contend that Plaintiff must demonstrate that they "committed an act or omission which caused D.W.'s death." (Document No. 29, pp. 21-22). Instead, Defendants argue that "Plaintiff simply alleges that Williams, Comas, and Saunders failed to supervise Weller, not that they did anything affirmatively to cause his death." (Document No. 29, p. 22).

Regarding the fifth claim for relief, for injury to prisoner, Defendants note that "[i]f the keeper of a jail shall do, or cause to be done, any wrong or injury to the prisoners committed to his custody, contrary to law, he shall not only pay treble damages to the person injured but shall be guilty of a Class I misdemeanor." (Document No. 29, p. 22) (citing N.C.Gen.Stat. § 162-55). Defendants assert that "[t]here are no allegations that Williams, Comas, and Saunders 'did' or 'caused to be done' anything to D.W. to cause his death." Id.

In response, Plaintiff argues that she "has adequately pleaded state-law negligence and negligence *per se* claims in Count III and Count IX."[1] (Document No. 41, p. 18). Plaintiff contends the allegations are sufficient to support these claims. Id.

> Plaintiff alleged that these three Defendants were on duty during the relevant time period at the same facility, that their job responsibilities included oversight of Defendant Weller, and that they shared responsibility with Defendant Weller for D.W.'s wellbeing. Doc. 24 at ¶ 286-87. Furthermore, Plaintiff alleges that these three Defendants knew or should have known of Defendant Weller's habit of failing to check on detainee's wellbeing with the required frequency. *Id.*

Id.

In addition, Plaintiff suggests that negligence is shown by an increase in suicides in North Carolina jails in the months leading up to D.W.'s death. Id. Under these circumstances, Plaintiff

---

[1] Plaintiff does not respond to Defendants arguments for dismissal of Counts IV and V. Compare (Document No. 29, pp. 21-22 and Document No. 41, pp. 18-19).

concludes that it is "astounding" "that supervisory staff took no steps to ensure their subordinates were making the necessary [ever ten minutes] welfare checks" of a child "identified [as] at risk for suicide." (Document No. 41, p. 19).

Defendants' reply asserts that "there are no facts supporting [Plaintiff's] legal conclusions" that Williams, Comas, and Saunders were negligent. (Document No. 45, p. 11).

The undersigned will recommend that the motion to dismiss be <u>denied</u> as to Counts III and IX against Williams, Comas, and Saunders in their individual capacity. The allegations are sufficient at this stage for these claims to survive. As noted above, it does not appear that Plaintiff opposes the dismissal of Counts IV and V against Williams, Comas, and Saunders in their individual capacity. (Document No. 41, pp. 16-19). As such, the undersigned will recommend that the motion to dismiss be <u>granted</u> as to those claims based on the reasoning and authority cited above.

### c. Individual Capacity Claim For Count V Injury To Prisoner Against Weller

Defendants do *not* seek dismissal of the individual capacity claims against Weller in Counts III, IV, and IX, but *do* seek dismissal of Count V. (Document No. 29, p. 21). Defendants acknowledge that allegations of negligence are sufficient to state a claim against Weller for wrongful death and survivor claims; however, Defendants note that an injury to prisoner claim (Count V) requires more than negligent conduct. (Document No. 29, pp. 22-23) (citing <u>Layman v. Alexander</u>, 294 F.Supp.2d 784, 796 (W.D.N.C. 2003) ("mere negligence is not sufficient to subject a defendant jailer to liability under § 162–55.").

Defendants argue that there are "no allegations Weller intended to injure D.W." <u>Id.</u> Plaintiff must "prove beyond a reasonable doubt that the jailer intended to injure the plaintiff or that the jailer was guilty of criminal negligence." (Document No. 29, p. 23) (quoting <u>Ramsey v.

Schauble, 141 F.Supp.2d 584, 591 (W.D.N.C.2001)). "Criminal negligence" is defined as "such recklessness or carelessness, resulting in injury or death, as imports a thoughtless disregard of consequences, or a heedless indifference to the safety and rights of others." Id. (quoting Letchworth v. Gay, 874 F.Supp. 107, 109 (E.D.N.C.1995)).

In response, Plaintiff asserts that the Complaint pleads precisely the kind of recklessness and/or carelessness that creates civil liability under N.C.Gen.Stat. § 162-55. (Document No. 41, pp. 14-15). In support of this position, Plaintiff again states that "Defendant Weller failed to conduct routine wellness checks on D.W. during the approximately 90 minutes leading up to D.W.'s death" and "[m]ore astoundingly, Defendant Weller fabricated government records related to that's day's wellness checks." (Document No. 41, p. 15) (citing Document No. 24, ¶¶ 229-237, 239-241, 315, 330). "Construing the well-pled facts in favor of Plaintiff, Weller unquestionably acted with a "thoughtless disregard of consequences" and a "heedless indifference to the safety" of others. Id. (quoting Ramsey v. Schauble, 5:01-CV-006-CH, 141 F.Supp.2d 584, 592 (W.D.N.C. 2001)).

According to Plaintiff, at the very least, Weller's actions amounted to deliberate indifference, which is sufficient to establish liability under N.C.Gen.Stat. § 162-55. (Document No. 41, p. 15) (citing Gunter v. S. Health Partners, Inc., 2021 WL 965035, at *10 (M.D.N.C. Mar. 15, 2021) ("The level of intent for criminal negligence is similar to that for § 1983 actions for deliberate indifference to an inmate's medical needs."); Stockton v. Wake Cnty., 173 F.Supp.3d 292, 319 (E.D.N.C. 2016) ("reckless indifference to an inmate's safety, resulting in injury or death, is sufficient" to "subject a jailer to liability under § 162 – 55"); and Layman v. Alexander, 1:03-CV-006-MOC, 294 F.Supp.2d 784, 796 (W.D.N.C. 2003) (same)).

In reply, Defendants suggest that dismissal should be granted, otherwise if the Court adopts "Plaintiff's theory of liability, any jailer who fails to conduct cell checks would be liable for violating a criminal statute, and thereby subject to liability under N.C.G.S. § 162-55." (Document No. 45, p. 9). Defendants contend that Plaintiff's citation to Layman v. Alexander is "non-availing" because the jailer in Layman "ignored a doctor's direct order to send the inmate to the hospital and the court held that those facts alleged an intent to injure the inmate." Id.

The undersigned finds Plaintiff's argument most persuasive. Notably, both sides cite to Layman v. Alexander. See (Document No. 29, p. 23; Document No. 41, p. 15; Document No. 45, p. 9). Contrary to Defendants' argument, neither Layman nor Plaintiff seem to suggest that "any jailer who fails to conduct cell checks would be liable for violating a criminal statute." See (Document No. 45, p. 9). Rather, Layman and Plaintiff focus on "reckless indifference to an inmate's safety, resulting in injury or death" as sufficient to create liability. Layman, 294 F.Supp. at 796; see also (Document No. 41, pp. 15-16). Curiously, Defendants do not mention, the Ramsey, Gunter, and Stockton decisions that Plaintiff also cites and are consistent with Layman's finding that the level of intent for criminal negligence is similar to that for § 1983 actions for deliberate indifference to an inmate's medical needs. (Document No. 41, p. 15; Document No. 45, p. 9). See also Thompson, 2020 WL 7033966 at *6-7.

As discussed above, the undersigned is persuaded that Plaintiff's allegations are sufficient at this stage of the litigation to support the claim for deliberate indifference as to Weller, and therefore, based on Plaintiff's arguments and legal authority, the undersigned finds that the injury to prisoner claim against Weller is also adequately alleged.

The undersigned will, therefore, recommend that the motion to dismiss the Count V claim for injury to prisoner be denied as to Defendant Weller in his individual capacity.

**B. Mecklenburg County's Motion to Dismiss**

In Count VI Plaintiff asserts a claim against Defendant Mecklenburg County (the "County") for violations of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12732 and Section 504 of the Vocational Rehabilitation Act ("VRA"), 29 U.S.C. § 794. (Document No. 24, pp. 47-49). The County contends that this claim should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6). (Document No. 30).

The parties agree that Title II of the ADA and Section 504 of the Rehabilitation Act are closely related and that the same analysis applies to claims under both statutes. (Document No. 31, p. 8; Document No. 40, pp. 13-14).

> In general, a plaintiff seeking recovery for violation of either statute must allege that (1) she has a disability, (2) she is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) she was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of her disability. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005).

(Document No. 40, p. 14); see also (Document No. 31, p. 8) (citing Shirley ex rel. Kyger v. City of Alexandria Sch. Bd., 229 F.3d 1143, 2000 WL 1198054, at *4 (4th Cir. 2000).

The "… County's Memorandum Of Law In Support Of Motion To Dismiss" presents four main arguments: (1) the Sheriff is responsible for operating the Jail, and therefore, the County cannot be liable for the alleged acts or omissions of Sheriff's Office personnel in the operation of the jail; (2) the Complaint does not allege facts that would establish D.W. was a qualified individual with a disability; (3) the Complaint does not identify any activity or program D.W. was denied access to for any reason; and (4) the Complaint does not allege sufficient facts to establish that D.W. was the subject of discrimination. (Document No. 31, p. 2).

**1. <u>Mecklenburg County Liability</u>**

The County first asserts that the allegations in the Complaint do not connect any act or omission by the County to D.W.'s death.  (Document No. 31, p. 5).  Rather, the only allegations against Mecklenburg County arise from the manner in which D.W. was detained and monitored for approximately 21 hours in Jail North.  Id.  The County argues that such allegations, as a matter of North Carolina law, do not state a claim against Mecklenburg County because "the sheriff has exclusive custody and control over the jail in his county."  (Document No. 31, p. 6) (quoting Wiley v. Buncombe County, 1:10-CV-181-RJC, 846 F.Supp.2d 480, 486 (W.D.N.C. 2012), aff'd 474 Fed.Appx. 285 (4th Cir. 2012); see also N.C.G.S. § 162–22 ("The sheriff shall have the care and custody of the jail in his county;  and shall be, or appoint, the keeper thereof.").

The County concludes that in the absence of allegations that Mecklenburg County "took any action or made any decisions about D.W.'s confinement, the claims . . . should be dismissed in their entirety."  (Document No. 31, p.7).

In response, Plaintiff asserts that the County's argument is "meritless."  (Document No. 40, p. 3).  Plaintiff suggests that the County is liable for ADA and/or VRA violations against D.W. because the County "is responsible for appropriating funds for jail design, construction, and maintenance, and responsible for putting the jail into operation."  (Document No. 40, pp. 3-4)(citing N.C.Gen.Stat. §§153A-216, 153A-218).  Plaintiff further asserts that "the County is charged 'with policymaking authority regarding the provisions of medical supervision, detection and treatment of certain infections and emergency medical care to county detainees.'"  (Document No. 40, p. 4) (quoting Lewis v. Peterkin, 2020 WL 5700755 at *2 (M.D.N.C. Sept. 24, 2020) (citing N.C.Gen.Stat. § 153A-225(a))).  Plaintiff relies on Lewis, and two other cases, for the argument that "federal district courts have denied motions to dismiss made by defendant counties in cases where plaintiffs alleged that the defendants failed to provide adequate medical care to

detainees." (Document No. 40, p. 5) (citing <u>Lewis v. Peterkin</u>; <u>Vaught v. Ingram</u>, 2011 WL 761482 (E.D.N.C. Feb. 24, 2011); and <u>Moran v. Polk County, et al.</u>, 1:18-CV-300-MR-WCM, 2019 WL 5297027 (W.D.N.C. Sept. 3, 2019) <u>aff'd</u> 2019 WL 4567548 (W.D.N.C. Sept. 20, 2019)).

Plaintiff contends that Defendant Mecklenburg County had an "ongoing statutory duty to ensure Jail North met NC DHHS standards." (Document No. 40, p. 6). Plaintiff further contends that the "factual allegations underpinning Plaintiff's ADA claims are not merely about the actions of the Sheriff's Office." <u>Id.</u> Nevertheless, Plaintiff then lists a series of allegations that mostly relate to the Sheriff's Office's responsibilities. (Document No. 40, pp. 6-7). The only allegation in that list that Plaintiff specifically directs at the County provides an inaccurate citation. <u>See</u> (Document No. 40, p. 6) (citing ¶ 193). In conclusion, Plaintiff claims that the County, along with the Sheriff, created the deficient conditions that caused D.W.'s death, and therefore, the County is a proper defendant for the ADA and VRA claims. (Document No. 40, p. 8).

The reply brief argues that Plaintiff's claim is premised on mistaken legal conclusions and overstates the County's responsibility for jail policies and operations. (Document No. 49, pp. 2-3). Defendant contends that Plaintiff has embedded an erroneous conclusion of law in the list of "factual allegations." (Document No. 49, p. 2) (citing Document No. 40, p. 6) ("The County was 'responsible for the formulation and execution of policies regarding the conditions of confinement of detainees in Jail North"). Defendant County notes that this claim/allegation cites the Complaint, not any applicable legal authority. (As noted above by the undersigned, this allegation also seems to cite the wrong paragraph in the Complaint).

Defendant further contends that Plaintiff mischaracterizes the County's responsibilities for the conditions of confinement. <u>Id.</u> The County explains that:

> North Carolina sheriffs are distinct from the counties in which they
> serve. They are not County employees, as they hold a constitutional

> office and are elected by the people. *Wiley v. Buncombe County*, 846 F.Supp.2d 480, 486 (W.D.N.C.), *aff'd* 474 Fed.Appx 285 (4th Cir. 2012). *See* N.C. Const. art. VII, § 2. The sheriff—not the County—is responsible for the administration of the jail, and "the sheriff has the sole statutory responsibility for the care and custody of the inmates at the County jail." *Vaught v. Ingram*, 2011 WL 761482, at *4 (E.D.N.C. 2011).

(Document No. 49, pp. 2-3).

The County agrees that it has specific and limited statutory responsibilities related to jail funding, design, construction, and maintenance, and for "policies to provide medical care to county detainees…," but argues that the allegations in this case "do not implicate these limited responsibilities." (Document No. 49, p. 3) (citations omitted).

Defendant County further argues that the configuration of the cell, was not, in itself, a deficiency – if there was a deficiency, it was the decision to assign D.W. to that particular cell. (Document No. 49, pp. 4-5). Similarly, under the applicable rules and policies D.W. was placed on suicide alert, but the allegations in the Complaint are that it was the corrections officers (who report to the Sheriff, not to the County) who failed to confirm his safety every ten minutes. (Document No. 49, p. 5). Therefore, "D.W.'s death did not result from the lack of a medical plan or the failure to provide medical care . . . [i]t resulted from an alleged failure of detention officers to follow the plan that was in place." (Document No. 49, p. 6).

In conclusion, the County states that:

> Plaintiff has not alleged facts that would establish a claim based on a failure to develop a plan for medical care to pretrial detainees at Jail North, has not even alleged a claim based upon the breach of a duty to provide medical care, and offered no relevant authority to support the proposition that the allegations asserted in this action would give rise to such a claim.

(Document No. 49, p. 8).

27

The undersigned finds the County's arguments most persuasive. The Complaint does not appear to include sufficient factual content or allegations to support a claim against the County for an ADA and/or VRA claim. Notably, the cases relied upon by Plaintiff do not include claims related to the ADA or VRA. <u>See</u> (Document No. 49, pp. 6-7). The crux of the allegations in this case are that D.W. was placed in an inappropriate cell and was not properly observed – these allegations seem to directly involve the responsibilities of the Sheriff's Office, not the County. (Document No. 24); <u>see also</u> (Document No. 49, pp. 4-6).

### 2. <u>Adequacy of Claim under ADA or VRA</u>

Next, the County argues that even *if* it were a proper defendant to claims arising out of the operation of the jail, Plaintiff's claims under the ADA and VRA should still be dismissed. (Document No. 31, pp. 7-8). As noted above, under either statute, Plaintiff "must establish that: (1) that [he] has a disability; (2) that [he] is otherwise qualified for the benefit or program in question[;] and (3) that [he] was excluded from the benefit or program due to discrimination solely on the basis of the disability." (Document No. 31, p. 8). The County contends that "Plaintiff has not alleged facts sufficient to establish any of these three elements of a claim under the ADA or the VRA." <u>Id.</u>

#### a. Sufficiency of Disability Allegations

According to the County, Plaintiff has failed to allege sufficient facts that establish that D.W. was a disabled person under the ADA or the VRA. (Document No. 31, p. 9). The County notes that while the Complaint alleges that D.W. had a history of substance abuse, sexual abuse, and a head injury, there are no specific allegations that he was diagnosed with a mental or physical impairment, or that any alleged disability substantially impaired a major life activity. <u>Id.</u> The

County argues that suicidal risk alone is not sufficient to show that an impairment is disabling.  Id. (citations omitted).

Plaintiff responds that it has alleged that D.W. was a qualified individual with a disability. (Document No. 40, p. 8).

> The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;  (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).  A mental impairment means "[a]ny mental or psychological disorder, such as an intellectual disability (formerly termed "mental retardation"), organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h)(2).

(Document No. 40, p. 8).

Plaintiff argues that the County "ignores specific factual allegations showing that D.W. had a history of mental illness."  (Document No. 40, pp. 9-10) (citing Document No. 24, ¶¶ 4, 106-109).  Moreover, Plaintiff notes that D.W. was placed on suicide alert which shows "that government officials perceived D.W. as somebody who was mentally impaired and suicidal." (Document No. 40, p. 10).

The reply does not appear to address Plaintiff's argument that it has adequately alleged that D. W. was a qualified individual with a disability.  (Document No. 49).

### b.  Program or Benefit Eligibility

The County also argues that even if D.W. was a qualified disabled individual, there are not sufficient allegations that he was "otherwise eligible" for a benefit or program for which he was denied access.  (Document No. 31, p. 10).  The Complaint "does not identify any program or benefit of any kind that would have been available to a detainee during his first 21 hours at the

29

Mecklenburg County juvenile detention center, much less one for which D.W. would have been eligible but for his alleged disability." Id.

According to Plaintiff, "[t]he Supreme Court has long recognized that the ADA applies to prisoners." (Document no. 40, p. 11). Plaintiff notes that the Supreme Court has opined that "[m]odern prisons provide inmates with many recreational 'activities,' medical 'services,' and educational and vocational 'programs,' all of which at least theoretically 'benefit' the prisoners (and any of which disabled prisoners could be 'excluded from participation in')." Id. (quoting Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S. 206, 210 (1998).

Plaintiff concludes that the "County cannot reasonably dispute that safe housing is a benefit or 'program' that its detainees are entitled to." (Document No. 40, p. 12).

The County's reply seems to conflate its arguments about accommodation and discrimination, as set forth in the section below. See (Document No. 49, pp. 8-9).

### c. Discrimination Based On Disability

Finally, the County argues the even if the other requirements were met, the Complaint does not allege any action that would constitute discrimination on the basis of disability. Id. Specifically, the Complaint "contains no allegations that D.W. was deprived of programs or activities during his 21 hours in . . . Jail North that would have been available to him but for a qualified disability. (Document No. 31, p. 11). The County notes that to the contrary, Plaintiff's claims are based on the premise that, due to D.W.'s history, he should have received a level of supervision and monitoring that other detainees did not. Id.

The County then asserts even if there are allegations of discrimination, there are no allegations that it was based on disability. The County cites to a decision by the United States Court of Appeals for the Tenth Circuit where an ADA claim was dismissed under similar

circumstances.  Id. (citing Crane v. Utah Dep't of Corrections, 15 F.4th 1296, 1314 (10th Cir. 2021)).

> The Court of Appeals affirmed the dismissal of the ADA claim:
>
> > Under the third prong of Title II of the ADA, the Amended Complaint must plausibly allege UDC denied Mr. Tucker appropriate housing "by reason of [his] disability."  Yet, the Amended Complaint fails to allege Mr. Tucker's disability was a but-for cause of the purported discrimination. Id. (internal citation omitted).

(Document No. 31, p. 12) (quoting Crane, 15 F.4th at 1314).

As in Crane, the County asserts that Plaintiff here has failed to plausibly allege that Mecklenburg County denied D.W. a benefit or program by reason of D.W.'s disability.  Id. Defendant Mecklenburg County concludes that there are not sufficient allegations to support its inclusion "as a defendant to claims arising out of the operation of the jail on November 20-21, 2020." Id.

In its opposition brief, Plaintiff asserts that it has [adequately] alleged that the County failed to accommodate D.W.'s disabilities.  (Document No. 40, pp. 12-15).  Plaintiff argues that the ADA and VRA impose "on the covered entity an 'affirmative obligation to make accommodations to the known physical or mental limitations of the individual.'" (Document No. 40, p. 13) (no citation in brief).  Plaintiff further argues that "a public entity discriminates against people with disabilities not only by invidiously treating them differently but also by failing to accommodate their disabilities." Id.

Plaintiff contends that other courts have allowed ADA and VRA "claims to proceed to discovery based on allegations that jail officials failed to ensure that a decedent was placed in safe housing."  (Document No. 40, p. 15) (citation omitted).  Plaintiff contends that "*Defendants* knew

that D.W. was disabled and suicidal but failed to ensure that he was placed in safe housing."  Id. (emphasis added).  "Jail and County officials knew that they should not have placed D.W. in a cell with a metal grate and with a bed sheet and in a unit where the officers failed to perform rounds." Id.

In reply, the County argues that the allegation that it "failed to accommodate D.W.'s needs for safe housing and mental health treatment" does not establish a basis for proceeding under the ADA and VRA under the facts alleged in the Complaint.  (Document No. 49, p. 8).  Defendant suggests that Plaintiff has failed to recognize the significance of the Crane decision that rejected the same argument under very similar facts.  (Document No. 49, p. 9) (citing Crane v. Utah Dep't of Corrections, 15 F.4th 1296, 1314 (10th Cir. 2021)).

> Like Plaintiff here, the plaintiff in *Crane* alleged that the decedent was a victim of discrimination because he was deprived of "access to safe, appropriate housing."  *Id.*  The Tenth Circuit's rejection of this contention is instructive, as it illustrates that the mere fact of harm to an allegedly disabled person while in custody is not sufficient by itself to establish the basis for a claim under the ADA or VRA.

(Document No. 49, p. 9)

Defendant County concludes that "Plaintiff cannot state a claim against a County for jail conditions or operations that are outside of the County's control and responsibility merely by calling those conditions or operations 'discrimination.'"  Id.  "Only by exaggerating the County's responsibility to include an all-encompassing obligation to set and execute policies related to jail conditions can Plaintiff attempt to connect the County to the supposed 'benefit or program' of safe housing on which the ADA and VRA claims are based . . . however, the County is not charged with the custody and care of jail detainees, nor does it administer the operation of the jail."  Id.

32

The undersigned agrees that even *if* the County were a proper Defendant to an ADA or VRA claim, the claim in this case should be dismissed for the reasons argued by the County. The undersigned finds the Crane decision, as well as Wiley, instructive here. In Wiley v. Buncombe County, this Court concluded that "[s]ince Buncombe County by law has no control over the Sheriff's employees and/or control over the jail, Buncombe County cannot [] be liable for the actions of Sheriff Duncan or those of his detention officers for events that occur at the Buncombe County Detention Facility operated by the Sheriff of Buncombe County." Wiley, 846 F.Supp.2d at 486-87. See also Landry v. North Carolina, et al., 3:10-CV-585-RJC-DCK, 2011 WL 3682788 (W.D.N.C. Aug. 23, 2011).

Even assuming D. W. was a qualified individual with a disability, Plaintiff has not plausibly alleged that the County denied him a benefit or program, or otherwise discriminated against him, on the basis of a disability. The undersigned will respectfully recommend that the County's motion to dismiss Count VI be granted.

**C. State of North Carolina, Eddie Buffaloe, Jr., and Kim Cowart's Motion to Dismiss**

Defendants Eddie Buffaloe, Jr., Kim Cowart, and the State of North Carolina ("North Carolina") seek dismissal of the claims for deliberate indifference (Count I) and wrongful death (Count III) against Cowart; and of the claim for violation of the North Carolina Persons with Disabilities Protection Act ("NCPDPA") (Count VII) against Buffaloe and North Carolina. (Document Nos. 50 and 51). Eddie Buffaloe, Jr. ("Buffaloe"), is the Secretary of the North Carolina Department of Public Safety ("NC DPS") and "is sued only in his official capacity." [2]

---

[2] In the Complaint and briefs, Plaintiff spells Secretary Buffaloe's last name with an "e" while Defendants spell it with just an "o" at the end. Usually, the undersigned would defer to Defendants' counsel's spelling of their client's name; however, here the Buffaloe spelling is consistent with the NC DPS website. See https://www.ncdps.gov/about-dps/office-secretary.

(Document No. 24, p. 9). Kim Cowart ("Cowart") was employed by NC DPS as the director of Alexander Regional Juvenile Detention Center ("Alexander Regional") and is sued in her individual capacity under Count I and in her individual and official capacities under Count III. (Document No. 24, p. 12). The DPS Defendants seek dismissal under Fed.R.Civ.P. 12(b)(1) and (6). (Document No. 50).

The DPS Defendants argue that this Court lacks jurisdiction over the claims against them because D.W. suffered no injury while at Alexander Regional. (Document No. 51, p. 7). Defendants contend dismissal is appropriate under Fed.R.Civ.P. 12(b)(1) because the "complaint simply fails to allege facts upon which subject matter jurisdiction can be based." (Document No. 51, p. 6) (quoting Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)).

Defendants note that

> Plaintiff must show the following three "irreducible minimum requirements":
>
> > (1) an injury-in-fact (i.e., a concrete and particularized invasion of a legally protected interest); (2) causation (i.e., a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (i.e., it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit).

(Document No. 51, p. 7) (quoting David v. Alphin, 704 F.3d 327, 333 (4th Cir. 2013)). Defendants contend that Plaintiff's Complaint fails to meet these requirements as to the claims in Counts I, III, and VII against the DPS Defendants.

### 1. Defendant Cowart

First, Defendants assert that the claims against Cowart under Counts I and III should be dismissed because they do not meet the injury and causation requirements.

Plaintiff alleges in the Count I, deliberate indifference § 1983 claim, that Cowart "had subjective knowledge of D.W.'s risk of suicide," "disregarded readily available information about D.W.'s condition," and "failed to properly classify him or to notify Mecklenburg that he was a suicide risk …[which] led directly to D.W.'s death." (Document No. 24, p. 40).

Defendants argue that Plaintiff has failed to provide facts to support this conclusion. Id. Rather, Defendants note that Plaintiff's own allegations show that during the fifteen (15) days D.W. was in Alexander Regional he was receiving mental health evaluations and treatment by Defendants Guess and Moore, licensed mental health professionals. (Document No. 51, pp. 7, 9) (citing Document No. 24, ¶¶ 163-166, 178-181). Although D.W. was removed from suicide alert during his stay at Alexander Regional, a self-harm prevention order was entered and D.W. did not attempt to commit suicide and no injury occurred while he was at Alexander Regional. See (Document No. 24, p. 23; Document No. 51, p. 9) (citations omitted).

Defendants also argue that it is not alleged that Cowart had any mental health experience or training or made any suicide prevention classification. (Document No. 51, p. 8). The only allegation is that Cowart "ratified" the decision to remove D.W. from suicide alert. Id. (citing Document No. 24, ¶ 168). Defendants contend there is *not* factual support that Cowart "failed to properly classify" D.W. Id.

Defendants note that correctional staff are entitled to rely on the advice of healthcare staff, and regardless, D.W. was evaluated by another set of mental health professionals when he arrived at Jail North, who decided D.W. needed to be placed on suicide alert. Id. (citing Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (citing Spruill v. Gills, 372 F.3d 218 (3rd Cir. 2004)).

To the extent Plaintiff asserts Cowart failed to notify Mecklenburg County of D.W.'s suicide risk, Cowart argues that Jail North had the same access to information on NC-JOIN as Cowart and Alexander Regional. (Document No. 51, p. 9) (citing Document No. 24, ¶ 11).

Finally, Defendant Cowart emphasizes that D.W. spent fifteen (15) days at Alexander Regional and did not attempt suicide or otherwise harm himself. Id. (citing Document No. 24, ¶ 146). Rather, it was at Jail North (within 21 hours of arrival) that D.W. committed suicide. Id. Cowart further notes that the injury that is the basis of Plaintiff's claim occurred under the watch of Sheriff McFadden and his subordinates, while no injury occurred under Cowart's watch at Alexander Regional. (Document No. 51, pp. 9-10). "It is hard to imagine how the Director of one facility can be responsible for the suicide of an inmate while the inmate is in the custody of a completely different facility." (Document No. 51, p. 10) (citing Curtis v. Campbell, 2021 WL 2414869, n. 13 (D.Md. 2021)).

Based on the foregoing, Defendant Cowart concludes that the Complaint fails to adequately allege the causation and injury requirements for Count I or Count III to support jurisdiction. Id.

"Plaintiff's Response…" disagrees and contends that this Court has jurisdiction over all claims against Cowart. (Document No. 52, pp. 5-8). Plaintiff argues that there is standing to bring the claims against Cowart "because the deceased suffered an injury that is fairly traceable to these particular Defendants' acts and omissions."

Plaintiff goes on to suggest that "[e]ven if D.W. had not died, he would have still suffered a cognizable legal injury sufficient to confer standing to sue Defendant Cowart and her employer." (Document No. 52, p. 6). Plaintiff notes that "[t]he injury-in-fact inquiry asks whether the plaintiff 'suffered an invasion of a legally protected interest that is concrete and particularized.'" (Document No. 52, p. 6) (quoting Spokeo, Inc. v. Robins, 578 U.S. 330, 339 (2016)). Plaintiff

contends that even a risk that does not blossom into actual harm supports a legally cognizable claim. Id. Plaintiff seems to further suggest, without citation to any allegations, that a jail official's conscious decision to ignore "current health problems" of an inmate, and/or "a condition of confinement that is sure or very likely to cause serious illness and needless suffering" supports a deliberate indifference claim. Id.

Plaintiff contends that she "has pleaded in exquisite detail how Defendant Cowart's omissions meaningfully contributed to D.W.'s death." (Document No. 52, p. 7). Plaintiff seems to conclude that D.W.'s injury/death at Jail North is fairly traceable to Cowart's alleged failure to override a decision to take D.W. off suicide alert and/or to ensure he was seen by a psychiatrist – while he was at Alexander Regional. Id.

Next, Plaintiff acknowledges that the "causation prong of Article III requires that it 'be likely that the injury was caused by the conduct complained of and not by the independent action of some third party.'" Id. (quoting Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 204 F.3d 149, 154 (4th Cir. 2000)). However, Plaintiff contends that the "existence of multiple wrongdoers does not undermine the causality of *these* defendants." (Document No. 52, p. 8) (citing Dixon v. Edwards, 290 F.3d 699, 713 (4th Cir. 2002)). Plaintiff concludes that whether other Defendants "violated D.W.'s constitutional rights does not affect Plaintiff's standing as to Defendant Cowart." Id.

In reply, and citing to the allegations in the Complaint, Defendants re-assert that "D.W. did not suffer an injury while housed at Alexander Regional, meaning that Plaintiff cannot satisfy the injury requirement for standing." (Document No. 53, p. 1) (citations omitted). "The traceability prong means it must be likely that the injury was caused by the conduct complained of *and not by*

37

*the independent action of some third party*." Id. (quoting Friends of the Earth, Inc., 204 F.3d at 154 (emphasis added by Defendants).

Contrary to Plaintiff's argument, Defendants assert that "the independent actions of third-parties (i.e. Jail North) directly affect the traceability of a plaintiff's (i.e. D.W.'s) injury." (Document No. 53, p. 2). Defendants further assert that "Plaintiff has alleged a litany of independent acts of negligence that occurred *after* D.W. left Alexander Regional." "[B]y Plaintiff's own admission, once D.W. was transported to Jail North, Sheriff McFadden and his subordinates had 'an *independent* obligation to ensure that the conditions of confinement for juvenile detainees at Jail North do not fall short of that required by the Fourteenth Amendment.'" Id. (quoting Document No. 24, ¶ 206).

Defendants conclude that the independent acts by Jail North and/or other Defendants "break the causal chain," and therefore, "Plaintiff cannot satisfy the traceability prong of Article III standing." Id.

The undersigned finds Defendants' arguments most compelling. In particular, the undersigned is persuaded that Plaintiff has not alleged facts that support the causation/traceability requirement to establish standing over Defendant Cowart for Counts I or III. To the contrary, the allegations in the Complaint suggest that Alexander Regional provided the care and/or housing that Jail North should have provided, and do not show that *Cowart's* actions or omissions caused D.W. injury at either facility.

Based on the foregoing, the undersigned will respectfully recommend that the motion to dismiss claims under Counts I and III against Defendant Kim Cowart be granted. The undersigned finds that Defendants' first argument provides a sufficient basis for dismissal of all claims against

Cowart and will decline to analyze the additional arguments for dismissal of the claims against Cowart.

**2. <u>Defendants Buffaloe and State of North Carolina</u>**

Defendants next argue that the only claim against Secretary Buffaloe and North Carolina, Count VII for violation of the North Carolina Persons with Disabilities Protection Act ("NCPDPA"), should be dismissed for failing to establish all three requirements for standing. (Document No. 51, p. 10);  <u>see also</u> <u>David v. Alphin</u>, 704 F.3d 327, 333 (4th Cir. 2013). Defendants contend that Plaintiff has "failed to identify a specific service, program, or facility that D.W. was denied;  failed to describe how he was denied access to that service, program, or facility;  and failed to identify who denied him access to it.  (Document No. 51, p. 11) (citing Document No. 24, at ¶¶ 351-363).  Defendants conclude that Plaintiff has failed to identify and injury-in-fact or causation as to Buffaloe or North Carolina.  <u>Id.</u>

In addition, Defendants note that Plaintiff's NCPDPA claim seeks "declaratory and injunctive relief to ensure that the current and future pre-trial detainees who are under the age of 18 – like her son – are afforded access to programs and services on an equal basis, regardless of the detainee's mental health status." <u>Id.</u> (citing ¶ 363).  Defendants contend that the relief Plaintiff seeks is for other individuals, not herself or her son, and is therefore not permitted.  <u>Id.</u>

Based on the foregoing, Defendants conclude that Plaintiff does not have standing to bring Count VII.  <u>Id.</u>

In response, Plaintiff argues that she has brought a viable claim under the NCPDPA because "Courts have long conferred standing on a person who alleges an ongoing harm that might be considered to be intangible and impossible to quantitate."  (Document No. 52, p. 17).  Plaintiff

then cites to cases that recognize "standing for plaintiffs who fear they are about to lose an aesthetic value that – for them – makes life worth living."  Id.  (citations omitted).

Plaintiff contends that the "ongoing emotional harm" she suffers due to her "unhappy knowledge of an ongoing risk to other North Carolina boys" suffering the same or similar injury as her son "is more palpable and more concrete than the so-called 'aesthetic' harm suffered by standing plaintiffs in the above-described environmental cases."  (Document No. 52, p. 18).  Plaintiff concludes that if courts can extend standing in the environmental cases she cited, it should be extended to her.  Id.

In reply, Defendants contend that "Plaintiff egregiously errs in arguing Adrianna Blackwell has standing to bring a claim under the [NCPDPA]."  (Document No. 53, p. 7).  Defendants note that Adrianna Blackwell ("Blackwell"), in her personal capacity, is not a party to this action, rather she appears "as administratrix of the estate of D.W. deceased."  Id.  Defendants further explain that

> The representative can only bring actions D.W could have brought, excluding actions for defamation, false imprisonment, and actions where the relief sought could not be enjoyed, or granting it would be nugatory after death. N.C. Gen. Stat. § 28A-18-1. This excludes actions for declaratory and injunctive relief, as these forms of relief cannot be enjoyed by the decedent and the relief would be nugatory. *Carter v. Cain*, 2019 WL 846053 (M.D. La 2019) (injunctive and declaratory relief require evidence of future harm); *Bauer v. Texas*, 341 F.3d 352 (5th Cir. 2003) (same); *SEC v. Medical Comm. for Human Rights*, 404 U.S. 403, (1972) (An actual controversy must be extant at all stages of review, not merely at the time the complaint was filed).

(Document No. 53, pp. 7-8).

The undersigned again finds the DPS Defendants' arguments most compelling.  Moreover, Plaintiff's response, and the lack of applicable authority or attention to Defendants' arguments regarding injury and causation, is not helpful.

40

The undersigned is sympathetic to the psychological and emotional harm Plaintiff describes, but the undersigned, respectfully, is not persuaded she has legal standing to bring this claim against these Defendants. Under the circumstances of this case, the undersigned will respectfully recommend that the motion to dismiss be <u>granted</u> as to the Count VII NCPDPA claim against Secretary Buffaloe and North Carolina.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that "Defendants Sheriff Garry McFadden, Dwight Weller, Tiffany Williams, Akeem Comas, And Henrietta Saunders' Partial Motion To Dismiss Plaintiff's Amended Complaint" (Document No. 27) be **GRANTED in part and DENIED in part** as follows:

- Count I – Williams, Comas, Saunders – <u>grant</u> dismissal
- Count I – Weller – <u>deny</u> dismissal
- Count II – McFadden – <u>deny</u> dismissal
- Count III – Weller, Williams, Comas, Saunders – <u>grant</u> dismissal (official capacity)
- Count III – Williams, Comas, Saunders – <u>deny</u> dismissal (individual capacity)
- Count III – McFadden, Weller (individual capacity) – dismissal not sought
- Count IV – Weller, Williams, Comas, Saunders – <u>deny</u> dismissal (official capacity)
- Count IV – Williams, Comas, Saunders – <u>grant</u> dismissal (individual capacity)
- Count IV – Weller (individual capacity) – dismissal not sought
- Count V – Williams, Comas, Saunders – <u>grant</u> dismissal (individual/official capacity)
- Count V – Weller – <u>deny</u> dismissal (individual/official capacity)
- Count VIII – McFadden – dismissal not sought
- Count IX – Weller, Williams, Comas, Saunders – <u>grant</u> dismissal (official capacity)
- Count IX – Williams, Comas, Saunders – <u>deny</u> dismissal (individual capacity)
- Count IX – McFadden (official), Weller (individual) – dismissal not sought.

**IT IS FURTHER RECOMMENDED** that "Defendant Mecklenburg County's Motion to Dismiss Amended Complaint" (Document No. 30) be **GRANTED** as follows:

- Count VI – Mecklenburg County – <u>grant</u> dismissal.

**IT IS FURTHER RECOMMENDED** that the "Motion To Dismiss By Defendants State, Buffalo, And Cowart" (Document No. 50) be **GRANTED** as follows:

- Counts I and III – Cowart – <u>grant</u> dismissal (individual/official capacity)
- Count VII – Buffaloe and North Carolina – <u>grant</u> dismissal.

## V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. <u>Diamond v. Colonial Life</u>, 416 F.3d 310, 315-16 (4th Cir. 2005); <u>United States v. Benton</u>, 523 F.3d 424, 428 (4th Cir. 2008). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. <u>Id.</u> "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" <u>Martin v. Duffy</u>, 858 F.3d 239, 245 (4th Cir. 2017) (quoting <u>United States v. Midgette</u>, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: June 15, 2023

David C. Keesler
United States Magistrate Judge